**PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP**

1285 AVENUE OF THE AMERICAS
NEW YORK, NEW YORK 10019-6064
TELEPHONE (212) 373-3000

LLOYD K. GARRISON (1946-1991)
RANDOLPH E. PAUL (1946-1956)
SIMON H. RIFKIND (1950-1995)
LOUIS S. WEISS (1927-1950)
JOHN F. WHARTON (1927-1977)

UNIT 3601, OFFICE TOWER A, BEIJING FORTUNE PLAZA
NO. 7 DONGSANHUAN ZHONGLU
CHAOYANG DISTRICT
BEIJING 100020
PEOPLE'S REPUBLIC OF CHINA
TELEPHONE (86-10) 5828-6300

12TH FLOOR, HONG KONG CLUB BUILDING
3A CHATER ROAD, CENTRAL
HONG KONG
TELEPHONE (852) 2846-0300

ALDER CASTLE
10 NOBLE STREET
LONDON EC2V 7JU, U.K.
TELEPHONE (44 20) 7367 1600

FUKOKU SEIMEI BUILDING
2-2 UCHISAIWAICHO 2-CHOME
CHIYODA-KU, TOKYO 100-0011, JAPAN
TELEPHONE (81-3) 3597-8101

TORONTO-DOMINION CENTRE
77 KING STREET WEST, SUITE 3100
P.O. BOX 226
TORONTO, ONTARIO M5K 1J3
TELEPHONE (416) 504-0520

2001 K STREET, NW
WASHINGTON, DC 20006-1047
TELEPHONE (202) 223-7300

500 DELAWARE AVENUE, SUITE 200
POST OFFICE BOX 32
WILMINGTON, DE 19899-0032
TELEPHONE (302) 655-4410

WRITER'S DIRECT DIAL NUMBER
(212) 373-3506

WRITER'S DIRECT FACSIMILE
(212) 492-0506

WRITER'S DIRECT E-MAIL ADDRESS
mfalcone@paulweiss.com

MATTHEW W. ABBOTT
ALLAN J. ARFFA
ROBERT A. ATKINS
DAVID J. BALL
JOHN F. BAUGHMAN
LYNN B. BAYARD
DANIEL J. BELLER
CRAIG A. BENSON
MITCHELL L. BERG
MARK S. BERGMAN
BRUCE BIRENBOIM
H. CHRISTOPHER BOEHNING
ANGELO BONVINO
JAMES L. BROCHIN
RICHARD J. BRONSTEIN
DAVID W. BROWN
SUSANNA M. BUERGEL
PATRICK S. CAMPBELL*
JESSICA S. CAREY
JEANETTE K. CHAN
YVONNE Y. F. CHAN
LEWIS R. CLAYTON
JAY COHEN
KELLEY A. CORNISH
CHRISTOPHER J. CUMMINGS
CHARLES E. DAVIDOW
DOUGLAS R. DAVIS
THOMAS V. DE LA BASTIDE III
ARIEL J. DECKELBAUM
ALICE BELISLE EATON
ANDREW J. EHRLICH
GREGORY A. EZRING
LESLIE GORDON FAGEN
MARC FALCONE
ROSS A. FIELDSTON
ANDREW C. FINCH
BRAD J. FINKELSTEIN
BRIAN P. FINNEGAN
ROBERTO FINZI
PETER E. FISCH
ROBERT C. FLEDER
MARTIN FLUMENBAUM
ANDREW J. FOLEY
HARRIS B. FREIDUS
MANUEL S. FREY
ANDREW L. GAINES
KENNETH A. GALLO
MICHAEL E. GERTZMAN
ADAM M. GIVERTZ
SALVATORE GOGLIORMELLA
ROBERT D. GOLDBAUM
NEIL GOLDMAN
ERIC GOODISON
CHARLES H. GOOGE, JR.
ANDREW G. GORDON
UDI GROFMAN
NICHOLAS GROOMBRIDGE
BRUCE A. GUTENPLAN
GAINES GWATHMEY, III
ALAN S. HALPERIN
JUSTIN G. HAMILL
CLAUDIA HAMMERMAN
GERARD E. HARPER
BRIAN S. HERMANN
ROBERT M. HIRSH
MICHELE HIRSHMAN
MICHAEL S. HONG
DAVID S. HUNTINGTON
LORETTA A. IPPOLITO
JAREN JANGHORBANI
MEREDITH J. KANE

ROBERTA A. KAPLAN
BRAD S. KARP
PATRICK N. KARSNITZ
JOHN C. KENNEDY
BRIAN KIM
ALAN W. KORNBERG
DANIEL J. KRAMER
DAVID K. LAKHDHIR
STEPHEN P. LAMB*
JOHN E. LANGE
DANIEL J. LEFFELL
XIAOYU GREG LIU
JEFFREY D. MARELL
MARCO V. MASOTTI
EDWIN S. MAYNARD
DAVID W. MAYO
ELIZABETH R. McCOLM
MARK F. MENDELSOHN
WILLIAM B. MICHAEL
TOBY S. MYERSON
CATHERINE NYARADY
JANE B. O'BRIEN
ALEX YOUNG K. OH
BRAD R. OKUN
KELLEY D. PARKER
MARC E. PERLMUTTER
VALERIE E. RADWANER
CARL L. REISNER
WALTER G. RICCIARDI
WALTER RIEMAN
RICHARD A. ROSEN
ANDREW N. ROSENBERG
JACQUELINE P. RUBIN
RAPHAEL M. RUSSO
JEFFREY D. SAFERSTEIN
JEFFREY B. SAMUELS
DALE M. SARRO
TERRY E. SCHIMEK
KENNETH M. SCHNEIDER
ROBERT B. SCHUMER
JAMES H SCHWAB
JOHN M. SCOTT
STEPHEN J. SHIMSHAK
DAVID R. SICULAR
MOSES SILVERMAN
STEVEN SIMKIN
JOSEPH J. SIMONS
MARILYN SOBEL
AUDRA J. SOLOWAY
SCOTT M. SONTAG
TARUN M. STEWART
ERIC ALAN STONE
AIDAN SYNNOTT
ROBYN F. TARNOFSKY
MONICA K. THURMOND
DANIEL J. TOAL
LIZA M. VELAZQUEZ
MARIA T. VULLO
ALEXANDRA M. WALSH*
LAWRENCE G. WEE
THEODORE V. WELLS, JR.
BETH A. WILKINSON
STEVEN J. WILLIAMS
LAWRENCE I. WITDORCHIC
MARK B. WLAZLO
JULIA MASON WOOD
JORDAN E. YARETT
KAYE N. YOSHINO
TONG YU
TRACEY A. ZACCONE
T. ROBERT ZOCHOWSKI, JR.

*NOT ADMITTED TO THE NEW YORK BAR

July 18, 2014

By ECF

Honorable Vincent L. Briccetti
United States District Court for the Southern District of New York
United States Courthouse
300 Quarropas Street, Room 360
White Plains, NY 10601

   Re: *International Business Machines Corporation v. Jeffrey Doyle*,
     Case No. 14-CV-5072 (VLB) (S.D.N.Y.)

Dear Judge Briccetti:

   We write on behalf of plaintiff IBM in response to Defendant's letter to the Court dated June 17, 2014 ("Defendant's Letter").

   IBM was ready to start its document production on Sunday, July 13, 2014, and after the parties resolved certain technical issues, IBM commenced its production early on Monday July 14. IBM made the bulk of its production on Tuesday, July 15. IBM's provided documents directly related to its application for a preliminary injunction, including internal IBM presentations, competitive analyses, deal logs, acquisition pipelines, divestiture lists, and M&A strategy reports, all showing the trade secrets known to Defendant and that Defendant would inevitably use in his role as head of M&A at Accenture.

PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP

Honorable Vincent L. Briccetti                                                                                          2

        The most striking omission from Defendant's Letter is any consideration given to the appropriate scope of discovery at this stage of the litigation. On July 8, 2014, the Court granted IBM's application for a temporary restraining order enjoining Defendant from starting work at Accenture (the "TRO") and scheduling a preliminary injunction hearing (the "PI Hearing") for July 22, which the Court later re-scheduled for July 29. The Court also ordered Defendant to serve his papers in opposition to IBM's motion by July 17 (today), and subsequently moved that date to July 24. This schedule clearly demanded reasonable self-restraint in discovery.

        Apparently indifferent to what reasonably could be done in the time available for discovery, Defendant, on July 9, served 40 document requests, and the very next day, on July 10, Defendant served an additional 15 document requests, for a total of 55 sweeping document requests, 37 of which demanded "all documents" concerning broadly defined topics. Collectively, these 55 requests call for a voluminous, full-scale document production. Indeed, on Sunday, July 13, counsel for Doyle asked me to estimate the size of our pending production because she was concerned that IBM might produce "a million documents."

        The scope of Defendant's document requests would have been objectionable even if Defendant had propounded them in the course of full-blown pre-trial discovery. As discovery related to a one-day preliminary injunction hearing on 3 weeks' notice, at which IBM must show "a likelihood of success on the merits," the scope of Defendant's document requests are unreasonably excessive. For example, in *Irish Lesbian and Gay Organization v. Giuliani*, 918 F.Supp. 728 (S.D.N.Y. 1996), this court rejected "broadside" discovery requests that were "not reasonably tailored to the time constraints under which both parties must proceed or to the specific issues that will have to be determined at the preliminary injunction hearing." 918 F. Supp. at 731; s*ee also Dimension Data North America, Inc. v. NetStar-1, Inc.*, 226 F.R.D. 528, 532 (E.D.N.C. 2005) (finding discovery requests for "all documents" pertaining to various subjects outside the scope of the complaint "overly broad" and "not narrowly tailored to obtain information relevant to a preliminary injunction determination").

        Defendant also seems to be ignoring that the issues to be litigated at the preliminary injunction hearing are quite focused: Whether Mr. Doyle knows and will inevitably use valuable IBM trade secrets by virtue of his Corporate Development job at IBM and the new Corporate Development job he seeks to take at Accenture. This preliminary injunction motion is not, as Defendant's Letter suggests, about how IBM deals with other executives or IBM's agreements with other executives, whether other former executives who left IBM inflicted harm on IBM, or the other subjects about which Defendant now asks the Court to compel document production.

PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP

Honorable Vincent L. Briccetti				3

1. Defendant's Document Requests Concerning Non-Competition
   Agreements Between IBM and *Other* IBM Executives

IBM has not refused to provide discovery concerning its protection of the company's confidential information that Doyle knows. Defendant's Letter does not mention that IBM agreed to produce documents, subject to its objections, in response to Defendant's Request No. 31, which asks for documents "evidencing IBM's efforts to protect trade secrets or confidential information allegedly *provided to Doyle*." IBM also agreed to produce documents, subject to its objections, in response to Defendant's Request No. 32, which asks for documents "related to IBM's policies and procedures concerning trade secrets and/or confidential information which IBM has *provided to Doyle* . . . ."

IBM has, however, objected to producing documents in response to a series of requests about *other* IBM executives -- *i.e.*, documents unrelated to the preliminary injunction motion. In three pairs of these document requests—Request Nos. 4-5, 8-9, and 12-13 of Defendant's First Document Requests—Defendant seeks to discover the names of IBM personnel *other than Doyle* who have knowledge of confidential merger and acquisition ("M&A") information (in most cases not even limited to the same information possessed by Defendant) and whether each of those other individuals entered into a non-competition agreement with IBM. In addition, IBM objects to producing documents in response to Request No. 18 of Defendant's First Document Requests, in which Defendant seeks documents showing whether each of 12 named individuals other than Doyle has a non-competition agreement with IBM and to Request No. 19 of Defendant's First Document Requests, in which Defendant seek separation or settlement agreements between IBM and each of three other former IBM employees.

The case law shows that on a preliminary injunction motion, the "reasonableness of the clause must be measured by *the circumstances and the context in which enforcement is sought*." *Lumex, Inc.* v. *Highsmith*, 919 F.Supp. 624, 635 (E.D.N.Y. 1996) (emphasis added); *Gelder Medical Group* v. *Webber*, 41 N.Y.2d 680, 685, 394 N.Y.S.2d 867, 871, 363 N.E.2d 573, 577 (1977) (same); *see also Int'l Bus. Machs.* v. *Visentin*, No. 11 Civ. 399(LAP), 2011 WL 672025, at *22 and n.7 ("Because the reasonableness of IBM's Noncompetition Agreement is determined on a case-by-case basis, the Court does not and cannot address the validity of the Noncompetition Agreement under New York law generally.") (citing *Ticor Title Ins. Co.* v. *Cohen*, 173 F.3d 63, 70 (2d Cir. 1999)).

Even if the circumstances of executives other than Doyle were relevant, the wide-sweeping discovery sought here would invite a host of satellite litigations to determine whether those other circumstances were comparable to Doyle's -- *e.g.*, the *precise* nature, breadth and depth of each other employee's knowledge of trade secrets, job responsibilities at IBM, prospective job responsibilities at the proposed new employer, and the extent and nature of competition between IBM and the other employer.

PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP

Honorable Vincent L. Briccetti                                                                                                   4

As the Court already observed about the *Visentin* decision, all those other circumstances are not helpful in deciding the matter of Mr. Doyle.

The Court likewise should reject Defendant's demand in Request No. 4 of its Second Requests for "all transcripts of prior testimony of any IBM current and former employees who have testified in actions filed by IBM seeking to enforce non-competition agreements since 2008." Testimony given in other cases concerning other employees at other times has no probative value here.

2. Defendant's Document Request Concerning Dave Johnson

The Court should reject Defendant's demand for documents concerning "the harm, if any, to IBM caused by the departure of David Johnson" in Request No. 5 of Defendant's Second Set of Document Requests. This request literally seeks to re-litigate a case about a different IBM executive (Johnson), who went to a different competitor (Dell) focused on a different line of business (computer hardware) five years ago. Proving (or even disproving) the competitive injury caused by Mr. Johnson is not probative of whether Mr. Doyle's move to Accenture today will cause such harm.

3. Defendant's Demand for IBM Form Non-Compete Agreements

Request No. 40 of Defendant's First Set of Document Requests calls for all forms of non-competition agreements that IBM has used since January 1, 2011 -- *i.e.*, the agreements Doyle did *not* sign, are *not* the basis of IBM's motion, and are *not* sought to be enforced here. These documents do not, as Doyle contends, relate to the legitimacy of IBM's business interests in this case and the sufficiency of IBM's efforts to protect its confidential information and trade secrets.

4. IBM Conducted a Reasonable Document Search and Review Process

Defendant grossly misrepresents both IBM's written responses and objections to Defendant's Document Requests and the discussion that took place on July 16 during the meet-and-confer between counsel. First, in each instance in which IBM responded that it would produce documents responsive to one of Defendants' Document Requests, IBM expressly stated that it would do so subject to its clearly stated General and Specific Objections -- including that it would produce responsive documents "sufficient to show." Defendant's suggestion that defense counsel first learned that IBM was producing subject to its objections during the meet-and-confer is untrue. Second, IBM's General and Specific Objections make clear that IBM was objecting to the overbreadth of the Document Requests, Defendant's unreasonable demands for "all" concerning each topic, rather than "documents sufficient to show the pertinent information," and, specifically, Defendant's failure "to allow reasonable time for compliance." Thus, Defendant's suggestion that it was misled to believe IBM would search for and produce *all* responsive documents is not the case.

PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP

Honorable Vincent L. Briccetti                              5

    As we explained during the meet-and-confer, IBM adopted a document search and review procedure intended to locate and produce such responsive documents as IBM reasonably could locate and produce on the expedited schedule for discovery related to the PI Hearing. IBM did not choose a methodology to filter its document production. Defense counsel asked questions about this process during the meet-and-confer teleconference that ended shortly after 3:00 p.m. on Wednesday, July 16. We were finalizing our written answers to those questions when we received Defendant's Letter shortly after 2:00 p.m. on Thursday. We, nonetheless, emailed the information to defense counsel at 2:42 p.m. We explained that IBM identified certain custodians likely to have responsive documents, and asked those custodians to supply responsive documents. The documents were reviewed by counsel for responsiveness, privilege, and confidentiality designations. IBM also included electronic searches to cull down and select from the documents on the IBM laptop computer that Defendant used during his IBM employment. We provided defense counsel with a list of custodians who were asked for documents, a list of search terms used to search the laptop issued to Defendant, and other information. In sum, we provided information ample to address Defendant's inquiries.

    Defendant, however, waited until 5:58 a.m. today to respond with 15 sets of additional questions (about 30 questions overall). With an apology for burdening the Court with additional documents, we have included that email correspondence (5 pages) with this letter in support of our request for the Court's protection from Defendant's harassment of IBM and its counsel. Declaring that our response to Defendant's inquiries during the meet-and-confer "raises more questions than it answers," Defendant appears intent on multiplying and protracting the discovery disputes *ad infinitum*. We ask, therefore, for a protective order relieving IBM from having to respond to Defendant's continuing questioning of the sufficiency of IBM's document production.

    As stated in my letter to the Court yesterday, if Your Honor wishes to have a hearing on these issues, counsel for IBM is available all day.

                     Respectfully submitted,

                     Marc Falcone